UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael L. Barnes Jr., | Court File No. 15-cv-00029 MJD/JJK |
| Plaintiff, | |
| vs. | **FIRST AMENDED COMPLAINT** |
| City of Minneapolis and Peter Stanton, | |
| Defendants. | |

## PARTIES

1. Plaintiff is an adult male who currently resides and has resided in Minneapolis, Minnesota at all times relevant to this action.

2. Defendant Peter Stanton is an adult male who at all times relevant to the allegations set forth in this Complaint was acting under the color of state law in his capacity as a law enforcement officer employed by the City of Minneapolis, Minnesota. Plaintiff is suing him in his individual capacity.

3. Defendant City of Minneapolis is a political subdivision of the State of Minnesota. Minneapolis employed defendants Peter Stanton as a police officer at all times relevant to this action. Minneapolis is sued directly and also, on all relevant claims, on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02 for the unlawful conduct of Officer Peter Stanton. Minneapolis is a political subdivision charged with training and supervising law enforcement officers. Minneapolis has established and implemented, or delegated the responsibility for establishing and implementing, policies, practices, procedures, and customs used by law

enforcement officers employed by Minneapolis regarding seizures and the use of force. Minneapolis is therefore also being sued directly pursuant to *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978).

## JURISDICTION

4. This is an action for monetary and declaratory relief under 42 U.S.C. §§ 1983 and 1988 and federal and state common law. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1343(a)(3), 1331, and 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as the events giving rise to this action occurred in this district and, on information and belief, Defendants reside in this district.

## GENERAL ALLEGATIONS

5. On January 4, 2013, Minneapolis police officer Scott Creighton applied for a warrant to search the upstairs unit at 2411 Golden Valley Road, Minneapolis, Minnesota 55411.

6. Hennepin County District Court Judge Dennis J. Murphy found that probable cause existed and issued the search warrant for which Officer Creighton applied.

7. Judge Murphy found that entry at 2411 Golden Valley Road, Minneapolis, Minnesota 55411 without the announcement of authority or purpose was not necessary.

8. In other words, Judge Murphy did *not* issue a "no-knock" search warrant.

9. In the afternoon on January 9, 2013, Plaintiff was asleep at his home.

10. Plaintiff's home was the downstairs unit at 2411 Golden Valley Road, Minneapolis, Minnesota 55411.

11. Plaintiff was 17 years old at the time.

12. Plaintiff's friends arrived at 2411 Golden Valley Road, Minneapolis, Minnesota 55411 and woke up Plaintiff.

13. Immediately before Minneapolis police officers executed the search warrant signed by Judge Murphy, Plaintiff was standing inside the front door to the building at 2411 Golden Valley Road, Minneapolis, Minnesota 55411.

14. Plaintiff's friends were waiting in the hallway of that building.

15. Plaintiff and his friends were not carrying weapons of any kind.

16. Several Minneapolis police officers with assault rifles broke open the door behind which Plaintiff was standing, without the announcement of authority or purpose.

17. When the officers broke open the door, the door trapped Plaintiff in the corner of the hallway.

18. One of the Minneapolis police officers pointed a gun at Plaintiff and told Plaintiff to "get down."

19. Plaintiff informed the officer that he was trapped behind the door and could not lie down.

20. As soon as Plaintiff had room to lie on the floor, he voluntarily moved into a fully prone position.

21.   Officer Peter Stanton then stomped on the back of Plaintiff's head and the top of Plaintiff's shoulder area approximately six times.

22.   Plaintiff was subsequently handcuffed and left for several minutes in a puddle of his own blood.

23.   Plaintiff's vision was blurry for the next 10 to 12 minutes.

24.   Plaintiff asked for a paramedic.

25.   Plaintiff remained handcuffed for approximately 30 to 45 minutes.

26.   At approximately 6:00 p.m., Plaintiff was taken to the Hennepin County Medical Center ("HCMC").

27.   Plaintiff was diagnosed with "facial abrasion," "closed head injury," and "cervical strain."

28.   Plaintiff was instructed to wear a neck brace and take Ibuprofen and Hydrocodone for pain.

29.   Plaintiff took Hydrocodone for approximately two weeks and Ibuprofen for approximately one month.

30.   As a result of Plaintiff's injuries caused by Peter Stanton on January 9, 2013, Plaintiff saw Dr. Gentral L. Johnson, a Chiropractic Physician, two or three times per week for the next several weeks.

31.   On January 24, 2013 and February 6, 2013, Plaintiff returned to HCMC due to the shoulder injury caused by Peter Stanton on January 9, 2013.

32.   Plaintiff also lost at least one month's worth of wages due to his injuries caused by Peter Stanton on January 9, 2013.

33. Plaintiff also suffered emotional distress caused by Peter Stanton's misconduct on January 9, 2013, for example experiencing nightmares caused by the incident until at least June 2014.

34. Plaintiff was not charged with any crime related to the incident on January 9, 2013.

35. On January 10, 2013, Plaintiff complained to the Internal Affairs Division of the Minneapolis Police Department about the incident on January 9, 2013.

36. To the best of Plaintiff's knowledge, however, absolutely nothing happened as a result of his complaint to Internal Affairs.

## COUNT I
## DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS – EXCESSIVE FORCE

37. Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

38. Peter Stanton used force against Plaintiff while effectuating a seizure of him.

39. The amount of force Peter Stanton used while seizing Plaintiff was unreasonable under the circumstances.

40. Peter Stanton was acting under color of state law when he used unreasonable force in the process of seizing Plaintiff.

41. Defendants' actions or omissions caused Plaintiff to suffer a violation of his Fourth Amendment rights.

42. At the time of the events giving rise to this action, a reasonable officer would not think that stomping on a prone and compliant person was a reasonable amount of force.

43. Plaintiff suffered harm as a result of Defendants' violation of his constitutional rights.

## COUNT II
### DEPRIVATION OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS – FALSE ARREST AND UNLAWFUL SEIZURE

44. Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

45. Peter Stanton proximately caused Plaintiff's detention and arrest.

46. Peter Stanton lacked a warrant authorizing him to arrest or detain Plaintiff.

47. Peter Stanton lacked probable cause or reasonable suspicion to arrest or detain Plaintiff.

48. Peter Stanton lacked a reasonable belief of probable cause or reasonable suspicion to arrest or detain Plaintiff.

49. Peter Stanton was not otherwise authorized to arrest or detain Plaintiff.

50. Peter Stanton was acting under color of state law when he caused Plaintiff's detention and arrest.

51. Defendants' actions and omissions caused Plaintiff to suffer a violation of his Fourth Amendment rights.

6

52. At the time of Plaintiff's arrest, it was clearly established that it was unconstitutional detain and arrest someone absent probable cause or reasonable suspicion.

53. Plaintiff suffered harm as a result of Defendants' denial of his constitutional rights.

## COUNT III
## ASSAULT

54. Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

55. Peter Stanton acted with the intent to cause apprehension or fear of immediate offensive contact with Plaintiff.

56. Peter Stanton had the apparent ability to cause the offensive contact.

57. Plaintiff had a reasonable apprehension of fear that the immediate offensive contact would occur.

58. Peter Stanton's assault caused Plaintiff to suffer harm.

## COUNT IV
## BATTERY

59. Plaintiff restates the preceding paragraphs as though fully stated herein.

60. Peter Stanton caused harmful or offensive contact with Plaintiff.

61. Peter Stanton's harmful or offensive contact with Plaintiff caused Plaintiff to suffer harm.

## COUNT V
## FALSE IMPRISONMENT

62. Plaintiff restates the allegations contained in the preceding paragraphs as though fully incorporated herein.

63. Peter Stanton intentionally restricted Plaintiff's physical liberty by words or acts.

64. Plaintiff was aware of Peter Stanton's words or acts or was harmed by them.

65. There was no reasonable means of escape known to Plaintiff.

66. Plaintiff's arrest was made without proper legal authority.

67. Peter Stanton's false imprisonment of Plaintiff caused Plaintiff to suffer harm.

## COUNT VI
## NEGLIGENT RETENTION

68. Plaintiff restates the preceding paragraphs as though fully stated herein.

69. The City of Minneapolis, during the course of Peter Stanton's employment, became aware or should have become aware of problems with Peter Stanton that indicated his unfitness.

70. The City of Minneapolis failed to take further action with regard to Peter Stanton, such as investigation, discharge, or reassignment.

71. To the extent that the City of Minneapolis investigated problems with Peter Stanton, it was negligent in the pace or adequacy of its investigation.

72. The City of Minneapolis was also negligent in allowing Peter Stanton to remain on patrol duty after learning of Plaintiff's complaints.

73. The City's negligent retention caused Plaintiff to suffer harm.

## COUNT VII
## NEGLIGENT SUPERVISION

74. Plaintiff restates the preceding paragraphs as though fully stated herein.

75. The City of Minneapolis failed to exercise ordinary care in supervising the employment relationship with Peter Stanton, so as to prevent his foreseeable misconduct from causing harm to third persons.

76. The encounter between Plaintiff and Peter Stanton occurred while Peter Stanton was in uniform and on duty.

77. The City of Minneapolis did not exercise reasonable care in its supervision of Peter Stanton, by allowing him to remain on patrol duty after learning of Plaintiff's complaint.

78. The City's negligent supervision caused Plaintiff to suffer harm.

## JURY DEMAND

79. Plaintiff demands a jury trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Enter judgment in Plaintiff's favor on his claims against Defendants in an amount exceeding $50,000, the exact amount to be proven at trial;

2. Declare that Defendants' conduct, as set forth above, violated 42 U.S.C. § 1983;

3. Award Plaintiff damages to compensate him for the injuries he suffered as a result of Defendants' unlawful conduct;

4. Award Plaintiff punitive damages with respect to his claims under federal law, the exact amount to be proven at trial;

5. Award Plaintiff reasonable expenses incurred in this litigation, including attorney and expert fees, pursuant to 42 U.S.C. § 1988;

6. Grant Plaintiff all statutory relief to which he is entitled;

7. Grant Plaintiff leave to amend this Complaint to supplement any factual deficiencies or otherwise address any pleading deficiencies herein; and

8. Grant any other relief the Court deems just and equitable.

Dated: June 16, 2015

*s/Tim M. Phillips*
Tim M. Phillips (#390907)
tphillips@jrwilliamslaw.com
Joshua R. Williams (#389118)
jwilliams@jrwilliamslaw.com
3249 Hennepin Avenue S, Suite 216
Minneapolis, Minnesota 55408
(612) 486-5540
(612) 605-1944 Facsimile

**ATTORNEYS FOR PLAINTIFF MICHAEL BARNES**